UNION PAC. RY. CO. v. SCHIFF et al.

(Circuit Court, S. D. New York. June 6, 1896.)

INDEMNITY—AGREEMENT FOR BOND.
   The U. Railway Company having learned that certain securities, belonging to it and deposited as collateral for loans from a firm of bankers

who had become insolvent, had been rehypothecated by such firm with K. & Co., the railway company, for its own protection, took up the loan from K. & Co., with the collaterals, and at the same time left with K. & Co. certain securities and gave to them an agreement that such securities, or an indemnity bond, which might be substituted if satisfactory to K. & Co., should be held for K. & Co.'s protection against claims, all suits and expenses. Three years later, the railway company brought suit against K. & Co. to obtain a redelivery of such securities, making the assignee and a receiver of the insolvent banking firm parties. *Held* that such redelivery would not be decreed against the will of K. & Co., who were entitled to insist upon the agreement, but that inasmuch as the probability of claims against them was very slight, the requirement of an indemnity bond, which must receive a reasonable construction, ought to be satisfied by the giving of a bond, limited as to time and amount, against future claims.

This was a bill in equity, in the nature of a bill of interpleader, filed by the Union Pacific Railway Company, in behalf of S. H. H. Clark and others, its receivers, against Jacob H. Schiff and others, composing the firm of Kuhn, Loeb & Co., C. W. Gould, as assignee of the firm of Field, Lindley, Wiechers & Co. for the benefit of creditors, and Norman S. Dike, as receiver of the assets of said last-named firm.

The Union Pacific Railway Company had borrowed various sums, amounting to $850,000, from the firm of Field, Lindley, Wiechers & Co., upon collaterals deposited with that firm. On and prior to November 27, 1891, the railway company was ready and offered to pay the loans, all of which, but one note, were then due, and redeem the collaterals, but the Field firm made excuses to postpone returning the collateral, and it was not returned, nor the notes paid. On November 27, 1891, the Field firm made an assignment. Shortly after the railway company learned that a part of its securities had been rehypothecated by the Field firm with Kuhn, Loeb & Co., as part of the collateral for two loans of £50,000 sterling each, made by Kuhn, Loeb & Co. to the Field firm in good faith and in the usual course of business. In order to protect its securities, the railway company arranged with Kuhn, Loeb & Co. to buy these loans with their collaterals. Accordingly, on December 14, 1891, the railway company gave its check for the amount of the loans to Kuhn, Loeb & Co., the latter transferred the notes and collaterals to it, and the railway company gave to them the following agreement:

"New York, Dec. 14th, 1891.

"Messrs. Kuhn, Loeb & Co. having this day transferred to the Union Pacific Railway Company two obligations of Messrs. Field, Lindley, Wiechers & Co., each for fifty thousand pounds sterling, dated November 7th, 1891, and November 14th, 1891, respectively, with the collaterals therefor as they now stand, to protect Messrs. Kuhn, Loeb & Co. against any and all claims by reason of the transfer, or to any of the collaterals, the Union Pacific Railway Co. leave with Messrs. Kuhn, Loeb & Co. the following: Eighty-five thousand dollars Oregon Short Line & Utah Northern Railway collateral trust bonds; eighty-five thousand dollars of Oregon Short Line & Utah Northern consolidated 5 per cent. bonds,—it being understood that the Union Pacific Railway Co. may substitute other securities satisfactory to Messrs. Kuhn, Loeb & Co., or an indemnity bond, if satisfactory to them. The protection is against claims, all suits, and expenses. The Union Pacific Railway Co. agrees that, in addition to the above deposit, it personally will protect Messrs. Kuhn, Loeb & Co. against all such claims, suits, and expenses.

"The Union Pacific Railway Company,

"By [Signed] James G. Harris, Treasurer."

Certain other parties afterwards established their rights to part of the collaterals hypothecated by the Field firm with Kuhn, Loeb & Co., and by them transferred to the railway company, and the same were returned to their owners, upon payment of their respective shares of the cost to the

railway company. More than three years having elapsed without the assertion of any claim against Kuhn, Loeb & Co., the railway company filed this bill to obtain a redelivery to it of the securities left with Kuhn, Loeb & Co. under the agreement of December 14, 1891. Proof was made by the complainant, without dispute, of all the facts. Kuhn, Loeb & Co. insisted upon their rights to retain the securities unless furnished with an indemnity bond unlimited as to time and amount. Gould, as assignee, asserted a right to the collaterals after payment of the loans, and Dike, as receiver, claimed to be entitled to such of the collaterals as were not owned by the railway company or other third parties, and that Kuhn, Loeb & Co. owed him for any surplus of the collaterals over the loans upon an accounting.

E. Ellery Anderson and Holmes & Adams, for complainant.

John E. Parsons, for defendants Kuhn & Co.

Jasper W. Gilbert, Frederic A. Ward, and James S. Bishop, for defendants Gould and another.

Jabish Holmes, Jr., for defendant Colgate.

COXE, District Judge. The agreement of December 14, 1891, provides "that the Union Pacific Railway Company may substitute other securities satisfactory to Messrs. Kuhn, Loeb & Co., or an indemnity bond, if satisfactory to them. The protection is against claims, all suits and expenses." The complainant now proposes to take the substituted securities from the possession of Kuhn & Co. and put nothing in their place, in short to ignore the agreement and proceed in all respects as if it had never been executed. The complainant insists that upon the payment of the sterling notes the title of Kuhn & Co. to the collaterals was transferred to and vested in the complainant; that as matter of law the complainant took the title of the bankers and that the delivery of the collaterals could have been compelled by a judgment of the court. It is not thought necessary to decide what might have been the legal status had the complainant decided to rely upon its strict legal rights. It did not do so. It preferred to resort to negotiation. The result was the agreement of December 14th. This agreement was made intelligently and deliberately. There was no mistake of law or fact. It was made after the entire situation had been surveyed by eminent counsel whose ability to protect their clients' interests no one can dispute.

By the agreement of December 14th the complainant recognizes two propositions: First, that adverse claims to the collaterals might arise; and, second, that the bankers might be held liable. It is too late now to recede from this position. By recognizing the right of Kuhn & Co. to a reasonable indemnity the complainant obtained possession of the bulk of its securities it cannot now ignore the obligations thus imposed. The covenant to give a bond is as sacred as the bond itself and it will hardly be contended that had the complainant obtained possession of the collaterals by giving an indemnity bond, the court would release the sureties less than six years thereafter upon the doubtful theory that the bond was unnecessary. In short, the court is perfectly clear that the agreement of December 14th is a valid instrument which cannot be ignored. It must be dealt with in determining the rights of the parties.

. The complaint alleges no offer to give a bond but simply a naked demand for the delivery of the substituted securities and its refusal. The only allusion to the subject in the proof relates to the informal negotiations between counsel in which the complainant contended that the proposed bond should be limited as to time and amount and the bankers insisted that it should be as broad as the agreement of December 14th. The court is of the opinion that this question should be disposed of in limine. If Kuhn & Co. are entitled to retain the securities it would seem an inconsequential proceeding to pass upon the rights of the other parties to the action. Obviously the first step is to get securities in a position where they can be taken fairly and legally from the possession of the bankers. Having reached this point the court deems it prudent to take the suggestion of counsel as to the future course of the litigation. If, as the court assumed at the argument and still assumes, counsel are animated by a desire to waive technicalities there should be no great difficulty in arriving at a fair solution of the problem. It may conduce to this end if the court states its present impressions as to the manner in which this may be brought about.

It must be apparent to all that the danger of any claim, other than those represented in this suit, being made against the bankers is almost infinitesimal. No one here asserts any personal liability against them. If, then, they are released from all liability by the complainant and the other defendants and their costs and expenses paid it would seem that a bond sufficient to secure them from future attacks would be sufficient. Such attacks are so improbable that they may be regarded as well-nigh impossible. It is true that the contract provides that the security shall be satisfactory to the bankers, but this provision must have a reasonable construction. The bankers ought not to demand a bond absurdly out of proportion to the risk. A bond limited as to time and amount will, in the circumstances, indemnify against every conceivable claim, and more than this the bankers ought not to require.

Enough has been said to indicate the difficulties which seem to prevent a satisfactory decision of the cause unless, by the assistance of counsel, the court is enabled to remove them. If the court can be assured that upon the final decision being rendered the various parties will release Kuhn & Co. from all claims and that the plaintiff has agreed with Kuhn & Co. as to the bond to be given it will proceed and determine the other questions involved. Counsel may be heard orally at Canandaigua on the 16th inst., at Utica on the 23d inst., or at New York in October, or they may submit their views in the form of short printed briefs at any time within two weeks from the date of the filing of this decision.